JACOB P. KIPER, Administrator, *v.* DITTO L. NUTTALL and
THOMAS J. PENISTON.

Where a slave dies of a disease contracted since the sale, but before any redhibitory
action, the loss must be borne by the purchaser.
Death from a congestive fever contracted since the sale, is a fortuitous event within
the meaning of art. 2511 of the Civil Code.
Where a slave had been sick for several days, and no physician had been called until
within three hours of her death, such neglect will prevent a recovery of her
value, though she may have been affected with a redhibitory disease.
A purchaser is bound to take such care of the thing sold which he intends to return,
as might be expected from a prudent father of a family.

THIS was an action by the administrator of the estate of Margaret
Kiper, deceased, before the District Court for the parish of Cata-
houla, *King*, J.

*Mayo*, for the plaintiff.

*Garrett*, for the defendants and appellants.

MORPHY, J. This suit is brought on a promissory note. The
defendants admit their signatures to the instrument sued on,
Nuttall as principal, and Peniston as surety. But they aver that it
was given in part payment of two negroes purchased by Nuttall at
the probate sale of the estate of Margaret Kiper, deceased, with a
full warranty against all redhibitory vices and maladies; that one
of these slaves, a negro woman named Charlotte, was at the time
of the sale unsound and laboring under a disease with which she had
been long afflicted and which rendered her unfit for service; that the
administrator and heirs knew the condition of this slave, but con-
cealed it from the defendant; that the negro lingered from the time
of the purchase, and about three months thereafter died of the dis-
ease with which she had been afflicted, although every reasonable
effort was made to effect her cure. The answer concludes with a
prayer that, as the price of said negro is equal to the amount
claimed, the note sued on be cancelled and annulled, and that a
sum of two hundred dollars be allowed in reconvention for the
boarding, nursing and medical attendance of said slave. The in-
ferior court rendered a judgment in favor of the plaintiff, from
which the defendant appealed.

The testimony shows that the slave Charlotte was unhealthy at

the time of and before the sale to the knowledge of some of the heirs, but it is quite vague and unsatisfactory as to the nature of her disease. One of the witnesses calls it a female complaint brought upon her by an attempt to produce abortion; but even were we to consider the evidence as fully supporting the defence relied on, it could not, in our opinion, avail defendants in the present case. From the testimony of their own witnesses it clearly appears that Charlotte died of a congestive fever, a disease totally distinct from that under which she is represented to have been laboring before the sale. This new disease which occasioned her death, is as much a fortuitous event within the meaning of article 2511 of the Civil Code, as any sudden accident by which she might have perished. When the thing sold is thus destroyed, before the purchaser has instituted his redhibitory action, the loss must be borne by him. Far from any suit having been brought by Nuttall before the death of the slave, no complaint appears to have been made about her having been unsound, until after the inception of the present action. But leaving out of view the positive provision of law above quoted, the record discloses a circumstance alone sufficient to render unavailing the defence set up by defendants. The negro girl was taken sick with the fever from four to six days before she died; no physician was called in to attend on her except about three hours before her death, when the progress of the disease had in all probability rendered it impossible to save her. Such a neglect of the course and duties prescribed by humanity should, in our opinion, preclude a purchaser from recovering the value of a slave affected with any redhibitory disease; he is bound towards the vendor to take such care of the thing sold which he intends to return, as might be expected from a prudent father of a family.

*Judgment affirmed.*